UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| TERRANCE LOWDERMILK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 1:03-CV-395/1:01-CR-145 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**M E M O R A N D U M**

This matter comes before the Court on the motion of *pro se* petitioner Terrance Lowdermilk ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 1). Petitioner filed a brief and a supplemental brief in support of his motion (Court File No. 2; Crim. Court File No. 22). Pursuant to the Court's Order (Court File No. 3), the Government filed a response to Petitioner's motion (Court File No. 8) and Petitioner filed a reply (Court File No. 9). After careful consideration of the motion and briefs and for the reasons discussed below, the Court will **GRANT IN PART** and **DENY IN PART** Petitioner's motion to vacate, set aside, or correct his sentence.[1]

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in petitioner's § 2255 motion filed herein, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:01-CR-145, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

On April 18, 2002, with the benefit of a plea agreement, Petitioner pleaded guilty to possessing with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) (Count Three of the Indictment); possessing with intent to distribute marijuana (Court Four of the Indictment); and being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) (Count Five of the Indictment) (Crim. Court File Nos. 14, 15).

The factual basis for the plea agreement is as follows:

a. On or about May 29, 2001, a confidential informant ("CI"), working for the Hamilton County Sheriff's Department, made a controlled purchase of powder cocaine from [Petitioner] at his residence, located at or near 1642B Lancer Lane, Chattanooga, Tennessee, situated in the Eastern District of Tennessee.

b. On or about May 29, 2001, Hamilton County Sheriff's Office Narcotics Detective Van Hinton and TBI Special Agent Kenneth Blackburn executed a state search warrant at [Petitioner's] residence. A search of the premises resulted yielded $4,834.00 in U.S. currency, one (1) ounce of cocaine hydrocholoride, one and one-half (1 ½) ounces of marijuana, twelve (12) .25 caliber rounds of ammunition and four (4) shotgun shells, all manufactured outside the state of Tennessee, digital scales, and one bottle of suspected mannitol, commonly used as a cutting agent or extender for cocaine.

d. As of May 29, 2001, [Petitioner] had at least one prior conviction of a crime punishable by a term of imprisonment exceeding one year. Specifically, [Petitioner] was convicted by the State of Tennessee of at least the following two offenses: (1) aggravated assault on June 21, 1993, and (2) aggravated assault on December 20, 2000.

(Crim. Court File No. 15, p. 7).

After Petitioner pleaded guilty, a Presentence Investigation Report ("PSR") was prepared. Petitioner's base offense level was twenty-four (Presentence Investigation Report ("PSR") at ¶¶ 13-20). However, since Petitioner had two prior convictions for aggravated assault he was considered a career offender within the meaning of United States Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1 (PSR at ¶ 32). Therefore, Petitioner's offense level was enhanced to thirty-two (PSR at ¶ 32). The offense level was then reduced to twenty-nine for Petitioner's acceptance of responsibility

(PSR at ¶ 33). As a career offender, Petitioner's criminal history category was VI (PSR at ¶ 46, 63).[2]
Petitioner's Guideline Range for imprisonment was 151-188 months (PSR at ¶ 63). On November 8, 2002 Petitioner was sentenced to a term of 151 months imprisonment (Crim. Court File No. 18). A final judgment was entered on November 26, 2002 (Crim. Court File No. 19). Petitioner instructed his counsel, Phillip Duval ("Duval"), to file an appeal on his behalf. No appeal was filed.

Petitioner mailed his petition to vacate, set aside, or correct his conviction pursuant to 28 U.S.C. § 2255 on October 31, 2003 and the petition was received by the Clerk on November 7, 2003 (Court File No. 1). The petition was timely filed within the statutory one-year limitation period. 28 U.S.C. § 2255(1).[3]

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds Petitioner is entitled to an out-of-time appeal because Duval ignored Petitioner's request to file an appeal but Petitioner is not entitled to relief on any other ground. The Court will grant an out-of-time appeal without an evidentiary hearing because the

---

[2] If Petitioner was not considered a career offender his criminal history category would have been IV (PSR at ¶ 46).

[3] 28 U.S.C. § 2255, provides, in part:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

3

Court is convinced Petitioner has satisfied his burden. *See* Rule 8 Governing Section 2255 Proceedings; *Cf. United States v. Anderson*, 2005 WL 1745478 (S.D. Ohio July 22, 2005) (slip opinion) (granting a § 2255 petition without an evidentiary hearing where the Government did not contest the petitioner's allegation that her counsel failed to file an appeal after the petitioner requested counsel to do so). As for Petitioner's other claims, the Court likewise does not need to conduct an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943, 113 S. Ct. 2423, 124 L. Ed. 2d 644 (1993).

## II. DISCUSSION

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect in the proceedings which

4

necessarily results in a complete miscarriage of justice or an egregious error violative of due process.'" *Gail v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Petitioner asserts he was denied effective assistance of counsel in violation of the United States Constitution because:

    (1)    Counsel failed to adequately investigate Petitioner's prior criminal history, therefore Counsel failed to discover Petitioner was not a career offender under the Sentencing Guidelines (Court File No. 1, ground one);

    (2)    Counsel did not present certain records and documents that conclusively show Petitioner's prior state conviction was a suspended sentence (*Id.*, ground two);

    (3)    Counsel failed to object to the PSR which classified Petitioner as a career offender (*Id.*, ground three);

    (4)    Petitioner instructed Counsel to file an appeal but no appeal was filed (*Id.*, grounds four and five);

    (5)    Counsel failed to obtain a "Certificate of Restoration" which would have allowed Counsel to move for dismissal of the felon in possession charge (Court File No. 2, p. 12); and

    (6)    Counsel did not move for dismissal of the charges against Petitioner based on a violation of the Omnibus Crime Control and Safe Streets Act of 1968 (Court File No. 9, pp. 12-13).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

5

Case 1:03-cv-00395   Document 10   Filed 12/28/05   Page 5 of 16   PageID #: 37

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. The *Strickland* test, however, must be adjusted in cases where a defendant has pleaded guilty instead of being found guilty after a trial. *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.), *cert. denied,* 484 U.S. 870 (1987).

6

To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, Petitioner must show a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993); *United States v. Smith*, 981 F.2d 887, 894 (6th Cir. 1992).

The *Strickland* Court further held both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Petitioner has asserted he was provided with ineffective assistance of counsel in six ways.[4] The Court will address each of Petitioner's claims.

### A. Failure to File an Appeal

Petitioner contends he was denied effective assistance of counsel when Duval failed to file an appeal as requested (Court File No. 2, pp. 11-12). Petitioner states he "plainly instructed Mr.

---

[4] After Petitioner filed his § 2255 petition, he filed a motion for return of property seized by the State of Tennessee (Crim. Court File No. 22). Petitioner raises this issue in his reply brief. However, this issue does not relate to Petitioner's sentence or conviction. Therefore, the Court will not address the illegal seizure issue in the current Memorandum.

7

Duval...to file a notice of appeal and then to actually file the appeal to challenge the incorrect enhancement as career offender" (*Id.* at p. 12). Despite Petitioner's request, a notice of appeal was never filed.

In order to show his attorney performed deficiently in failing to file a notice of appeal, Petitioner must demonstrate either (1) Duval disregarded Petitioner's express instructions to file a notice of appeal; or (2) Duval failed to consult with Petitioner about an appeal where he knew or should have known Petitioner might want to appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). *See also Higbee v. United States*, 2001 WL 1176392, at *1 (6th Cir. Sept. 26, 2001) (unpublished opinion). Petitioner appears to concede he consulted with his attorney about the possibility of an appeal, but contends Duval ignored his direct request to file an appeal. When such an express request is made and ignored, counsel's conduct is deemed professionally unreasonable. *See Flores-Ortega*, 528 U.S. at 477-78; *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment").

The Government argues Duval did not provide ineffective assistance of counsel because "a direct appeal...would be a complete waste of judicial, government, and defense counsel's resources" (Court File No. 8, p. 10). In other words, the Government contends Duval was not required to file an appeal because the appeal would have been frivolous. While Petitioner's appeal may have been meritless, the Sixth Amendment is still violated if counsel fails to file an appeal after a defendant requests counsel to file one. *See Ludwig*, 162 F.3d at 459 (stating "a lawyer's failure to appeal a judgment, in disregard of the defendant's request, [constitutes] ineffective assistance of counsel regardless of whether the appeal would have been successful or not."). If Duval felt an appeal would

8

be frivolous he should have informed the Court of his client's intention to appeal. After filing this notice, Duval could then have filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967). *See* Sixth Circuit Rule 101(f)(3). Thus, Duval provided ineffective assistance of counsel when he failed to perfect an appeal after Petitioner requested him to file an appeal. Accordingly, the Court will **GRANT IN PART** Petitioner's § 2255 petition and **AUTHORIZE** Petitioner to file an out-of-time appeal.

### B. Career Offender Status

Three of Petitioner's ineffective assistance of counsel claims center on Petitioner's status as a career offender. Therefore, the Court will address each of these claims together. Petitioner pleaded guilty to aggravated assault on December 20, 2000 in Hamilton County, Tennessee Criminal Court (PSR at ¶ 44). He was sentenced to six years imprisonment but the sentence was immediately suspended and Petitioner was placed on probation (*Id.*). Petitioner contends this 2000 conviction should not have been used as a predicate offense for purposes of Petitioner's career offender status because:

(1) the sentence was suspended;
(2) the state court was without jurisdiction to suspend his sentence because Tenn. Code Ann. §§ 40-21-101 to 40-21-110 were repealed; and
(3) Duval knew the victim of the assault had denied the underlying facts.

Each of Petitioner's arguments is without merit.

Although Petitioner's sentence was suspended, it still can be used for purposes of determining whether Petitioner is a career offender. A "prior felony conviction" under § 4B1.1 is "a prior adult federal or state conviction for an offense punishable...for a term exceeding one year...*regardless of the actual sentence imposed*." U.S.S.G. § 4B1.2, comment. (n.1) (emphasis added); *see United States v. Parson*, 288 F.3d 818, 820 n.1 (6th Cir. 2002) (stating "[t]he actual

9

length of a sentence has no bearing on a USSG § 4B analysis other than the USSG § 4B1.2(c) requirements."). Therefore, Duval was not deficient in failing to present documents to the Court showing Petitioner's 2000 aggravated assault sentence was suspended. For the same reasons, Petitioner was also not prejudiced by Duval's failure.

Petitioner also argues his 2000 aggravated assault conviction should not have been used as a predicate offense because the Tennessee state court had no authority to suspend his sentence. Tenn. Code Ann. §§ 40-21-101 to 40-21-110 (1986) provided Tennessee courts with the authority to suspend the execution of a sentence and place a defendant on probation. These statutes were repealed by the Criminal Sentencing Reform Act of 1989. 1989 Tenn. Pub. Acts, c. 591, § 7; *see* Tenn. Code Ann. §§ 40-21-101 to 40-21-110 (1986). However, the authority to suspend sentences was not taken away, it was merely codified in a different part of the Tennessee Code. The Tennessee Code currently provides in pertinent part as follows:

> If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part thereof and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time fo the class of the conviction offense.

Tenn. Code Ann. § 40-35-303(c)(1). In addition, Petitioner raised this same argument in a Tennessee appellate court and the appellate court rejected Petitioner's argument. *See Lowdermilk v. State*, 2004 WL 1655757, at * 2 (Tenn. Crim. App. July 22, 2004). Accordingly, Duval was not deficient in challenging the ability of the Tennessee state court to suspend his sentence; neither was Petitioner prejudiced.

Petitioner next argues Duval was ineffective because he knew the victim of the 2000 assault had denied the underlying facts but he did not object to the use of the assault conviction as a

10

predicate offense. This argument is without merit. A defendant cannot collaterally attack, except for convictions obtained in violation of the right to counsel, a prior state court conviction used to enhance a federal sentence. *Smith v. United States*, 262 F.3d 537, 539-540 (6th Cir. 2001). If Duval tried to challenge the use of the prior state assault conviction to enhance Petitioner's sentence because the victim had subsequently denied she was assaulted, the challenge would have been rejected. Thus, Duval was not deficient and Petitioner was not prejudiced by Duval's failure to object to the use of the prior assault conviction based on the assault victim's denial of the underlying facts.

For the reasons previously stated, Petitioner argues he was not a career offender, therefore, Duval should have objected to the portion of the PSR which stated Petitioner was a career offender. As already discussed, Petitioner's arguments are without merit. The 2000 aggravated assault conviction was properly considered a predicate offense. Therefore, Duval was not deficient in failing to object to the PSR and it is clear Petitioner was not prejudiced by Duval's failure.

Lastly, Petitioner argues Duval provided ineffective assistance of counsel because he did not adequately research Petitioner's prior state convictions. Assuming Duval was deficient, Petitioner has not presented any fact or evidence suggesting Duval would have discovered anything to change Petitioner's sentence. Petitioner was properly considered a career offender. Thus, even if Duval was deficient in researching Petitioner's prior state convictions, Petitioner was not prejudiced.

### C. Felon in Possession Charge

Petitioner pleaded guilty to being a felon in possession of ammunition in violation of 18

U.S.C. § 922(g)(1).[5] Petitioner argues the § 922(g)(1) charge should have been dismissed because he had a "Certificate of Restoration" from the Tennessee Board of Probation and Parole which restored his right to possess ammunition. The certificate of restoration indicates that on August 3, 1997 Petitioner's full rights of citizenship were restored pursuant to Tenn. Code Ann. § 40-29-105 because he had been granted final release from incarceration or supervision from a sentence imposed on June 21, 1993 (Court File No. 2, Exh. B).[6] Since Petitioner's rights were restored in 1997 he may not have been subject to prosecution under § 922(g)(1) for the *1993 conviction*. *See United States v. Ormsby*, 252 F.3d 844, 849-50 (6th Cir. 2001); *United States v. Kenny*, 375 F. Supp. 2d 622 (E.D. Mich. 2005). However, Petitioner was convicted of another felony in December 2000. His rights were not restored for this felony conviction. Therefore, if Duval had moved to dismiss the felon in possession charge, the Court would have refused to dismiss it. Accordingly, Duval provided effective assistance of counsel even though he did not attempt to dismiss the § 922(g)(1) charge based on Petitioner's 1997 restoration of rights.

    **D.**    **Omnibus Crime Control and Safe Street Act of 1968 Violation**

---

[5] 18 U.S.C. § 922(g)(1) states in relevant part: "[i]t shall be unlawful for any person...who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year...to...receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[6] Tenn. Code Ann. § 40-29-105(b)(1) provides in part:

A person rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court may have full rights of citizenship restored upon:

    . . .

    (C) Being granted final release from incarceration or supervision by the board of probation and parole, or county correction authority.

12

In Petitioner's supplemental brief he argues Duval provided ineffective assistance of counsel when he failed to move to dismiss all charges against Petitioner due to a violation of Title III of the Omnibus Crime Control and Safety Act of 1968, 18 U.S.C. § 2510 *et seq.*. Apparently there was a tape recording of the undercover buy that took place on May 29, 2001 between a confidential informant working for the Hamilton County Sheriff's Department and Petitioner. The Omnibus Crime Control and Safe Street Act of 1968 provides in part:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has give prior consent to such interception.

18 U.S.C. § 2511(2)(c). There is no question here that the confidential informant was a party to the intercepted communication. The question is whether the confidential informant was acting under "color of law." Petitioner argues the confidential informant was not acting under "color of law" because the confidential informant "was never authorized to work in an under capacity by the State of Tennessee Attorney General" (Court File No. 9, p. 12). Petitioner seems to be arguing the confidential informant had to be employed or directed by the state Attorney General to be acting under "color of law". Petitioner cites no law for this proposition. "Courts have repeatedly held that informants who tape-record private conversations at the direction of the government investigators are 'acting under color of law' within the meaning of [§ 2511(2)(c)]." *United States v. Shields*, 675 F.2d 1152, 1156-57 (11th Cir. 1982); *see also Obron Atlantic Corp. v. Barr*, 990 F.2d 861, 864-65 (6th Cir. 1993) (explaining how to determine when the government has "directed" an informant's activities for purposes of § 2511(2)(c)). Petitioner does not dispute the confidential informant in this case was acting under the "direction" of the Hamilton County Sheriff's Department. Therefore, the Court concludes the confidential informant was acting under "color of law" and as a result Title III

13

of the Omnibus Crime Control and Safe Streets Act of 1968 was not violated. As such, Petitioner was not prejudiced by Duval's failure to move to dismiss the charges against Petitioner based on a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.

### III. CONCLUSION

For the reasons stated above, the Court will **GRANT IN PART** and **DENY IN PART** Petitioner's § 2255 motion. The Court will **GRANT** the portion of the motion dealing with ineffective assistance of counsel due to Duval's failure to file a direct appeal. As a remedy, the Court will allow Petitioner to file an out-of-time appeal. The Court will **DENY** the motion with respect to all remaining ineffective assistance of counsel claims.

For the portions of the § 2255 motion the Court will deny, the following discussion applies:

The Court must now consider issues that may arise if Petitioner files a notice of appeal on the portions of the § 2255 motion that have been denied. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[7] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death

---

[7] The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

14

Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

15

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**